**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

MUHAMMED RAHEEM TAQWA
ELSUPREME KALIFA

Plaintiff,

v. Case No. 2:26-cv-2379-SPC-KRH

JAROD ANDERSON, et al.,

Defendant.
______________________________/

**ORDER**

Plaintiff Muhammed Raheem Taqwa ElSupreme Kalifa initiated this action by filing a *pro se* civil rights complaint and supporting memorandum. Kalifa generally alleges that it is unconstitutional for residents of the Florida Civil Commitment Center (FCCC) to be held in secure management pending a criminal investigation. Kalifa proceeds *in forma pauperis* (Doc. 9), and his amended complaint and amended memorandum (Doc. 12; Doc. 7) are before the Court for initial screening.[1]

[1] A plaintiff seeking to proceed *in forma pauperis* will have his complaint screened in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B). This screening procedure requires the Court to dismiss a civil action prior to service of process if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). Despite Kalifa's non-prisoner status, his complaint is subject to initial review under 28 U.S.C. § 1915(e)(2)(B). *See Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) (recognizing that the district court did not err when it reviewed a complaint filed by a civil detainee under section 1915(e)(2)(B)).

After review, the Court dismisses the complaint under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted. Kalifa may file a second complaint if he wishes to proceed.

## I. Complaint

Kalifa is a sexually violent predator currently confined at the FCCC.[2] He sues FCCC Administrator Jarad Anderson, FCCC Security Director Robert Velez, FCCC Legal Assistant L. Cardenas, FCCC Mailroom Clerk Jane Doe Brown, and Desoto Sheriff John Doe Jiminez. The majority of Kalif's amended complaint and supporting memorandum consists of general argument that the privileges afforded residents in secure management are more restrictive and the conditions less pleasant than those in general population at the FCCC. Kalifa argues that it is unconstitutional for civilly committed sexually violent predators to be held in secure management pending investigation of crimes they may have committed because these residents are not being held for violating rules.

Kalifa also alleges some specific facts, which are accepted as true at this stage of litigation: Kalifa has a history of physical altercations with FCCC

[2] The Florida legislature enacted the Sexually Violent Predator (SVP) Act (Fla. Stat. §§ 394.910–.913), by which a person determined to be a sexually violent predator is required to be housed in a secure facility "for control, care, treatment, and rehabilitation of criminal offenders, until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." § 394.917(2).

resident David Sussman. (Doc. 6 at 3, ¶ 11. ) He fought with Sussman on May 25, 2026 and was placed in secure management status due to the altercation. (*Id.* ¶ 16.) On May 27, 2026, while in secure management, Kalifa and Sussman once again engaged in a physical altercation. (*Id.*) Kalifa wrote a criminal complaint to the Desoto County Sheriff's Department about the May 25, 2026 incident and gave it to Captain Hicks for mailing. (*Id.* ¶ 17.) He wrote a second complaint against Sussman on May 27, 2026. (*Id.*)

On June 30, 2026, Defendant Deputy Jiminez came to see Kalifa. (Doc. 6 at 6, ¶ 22.) Kalifa showed him the complaints he had written against Sussman for the episodes that transpired on May 25, 2026 and May 27, 2026. (*Id.*) Kalifa believes that Jiminez conspired with Defendant Velez "to impede the criminal investigation and the process of filing criminal charges against another Spanish speaking resident[.]" (*Id.*) Kalifa believes that when FCCC residents file charges against black residents the charges are investigated, but not so when charges are filed against white residents. (*Id.* ¶ 24.)

Kalifa alleges that lock down times in secure management are staggered throughout the day and then the residents are on lockdown from 9:45 p.m. until 6 a.m. (Doc. 6 at 8, ¶ 26.) He asserts that the common rooms in secure management are crowded, and the exercise yards are infested with bird and bat feces. (*Id.* at 9, ¶ 29.) The residents are supplied hygiene items only once per month. (*Id.* ¶ 31.) The shower area is infested with flies because it is not

clean. (*Id.* ¶ 32.) Residents are given watered-down cleaning supplies on weekdays, but they do not have bleach "or any real good cleaning supplies" for the bathrooms. (*Id.* ¶ 32.) Residents in secure management aren't allowed to use the gymnasium, east recreation yard, or recreational equipment. They are not allowed to wear their personal shoes or clothing. They cannot receive free telephone calls or in-person visits from spouses. Canteen items are limited, and they are not allowed outside packages from vendors. Television, Smart Tablet games and movies, and "computer time" for correspondence are prohibited. Use of LexisNexis is limited. Printing is limited to 40 pages per week, and they may not print envelopes. They cannot take GED classes, vocational training classes, Twelve Step Classes, or participate in a work program. Religious activities are limited. They are allowed to shave only once per week and to get a haircut monthly. (Doc. 6 at 7–7, ¶ 19.)

Kalifa seeks an injunction directing the defendants to provide him the same privileges as the general population at the FCCC. He also seeks monetary damages. (Doc. 6 at 10.)

## II. Discussion

Dismissals for failure to state a claim under § 1915(e)(2)(B)(ii) are governed by the same standard as Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). Although a complaint "does not need detailed factual allegations," it must provide "more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, a complaint may not rest on " 'naked assertions[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Here, although Kalif's amended complaint and memorandum total 24 pages, the actual relevant facts alleged are sparse. Construed liberally, it appears that Kalifa seeks to raise claims based on his prolonged confinement in secure management and on the general conditions in secure management at the FCCC. However, a explained below, Kalifa has not stated any plausible constitutional claims.

**A. Kalifa has filed a shotgun pleading.**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Rule 10(b) separately requires that a party "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Complaints that violate Rules 8(a)(2) and 10(b)—in letter or spirit—are often called "shotgun pleadings." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit

has identified four categories of shotgun pleadings, including complaints (such as this one) that are conclusory, vague, or "not obviously connected to any particular cause of action," complaints that do not "separate[e] into a different count each cause of action or claim for relief," and complaints that "assert[] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1322. Shotgun pleadings do not "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

Here, Kalifa's complaint consists primarily of argument. And although the Court liberally construes the complaint as asserting due process and conditions of confinement claims, he does not explain how the named defendants—defendants as disparate as an unnamed mailroom clerk, a legal assistant, and a Desoto County Sheriff's deputy—were responsible for his detention in (or the conditions of) secure management at FCCC. Neither the Court nor the defendants are required to read between the lines to create an actionable complaint on a plaintiff's behalf. *See Barmapov v. Amuial*, 986 F.3d 1321, 1328 (11th Cir. 2021) (Tjoflat, J., concurring) ("[D]istrict courts are flatly forbidden from scouring shotgun complaints to craft a potentially viable claim for a plaintiff.").

**B. Kalifa has no constitutional right to the criminal prosecution of David Sussman.**

Kalifa asserts that he wrote two letters to the Desoto County Sheriff's Department complaining about his altercation with David Sussman and requesting that they prosecute Sussman. Thereafter, he was visited by Deputy Jiminez, but presumably, Jiminez did not bring charges against Sussman. Although Kalifa believes this is unfair or racist (because Sussman is white), "a private citizen lacks a judicially cognizable interest in the prosecution or non prosecution of another." *Leeke v. Timmerman*, 454 U.S. 83, 86–87 (1981). In other words, Kalifa can neither bring a direct criminal action against Sussman nor petition the federal courts to compel the Desoto County Sheriff's Office to do so on his behalf.

**C. Kalifa has not stated a claim based upon the duration or conditions of confinement in secure management.**

A claim challenging conditions of confinement must demonstrate an infliction of pain "without any penological purpose" or an "unquestioned and serious deprivation of basic human needs" such as medical care, exercise, food, warmth, clothing, shelter, or safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Kalifa argues that periods of forced seclusion and restrictions imposed on residents in secure management are the type of conditions deemed unconstitutional by the Seventh Circuit in *West v. Schwebke*, 333 F.3d 745 (7th Cir. 2003). (Doc. 7 at 6.) They are not. In *West*, the detainees in seclusion

"were allowed out, in shackles, [only] one hour a day on weekdays and not at all on weekends." *West*, 333 F.3d at 747. This is a far from the night and lunch-time seclusion periods alleged here. And in a recent case in which another FCCC resident, Juan Francisco Vega, alleged unconstitutional conditions of confinement in the SMU, the Eleventh Circuit noted that "the conditions of Vega's placement in the Special Management Unit [are] not unduly restrictive. The uncontested record evidence established that while in the Special Management Unit, Vega had access to common areas, daily fresh air, legal computer time, recreation, communal religious services and off-unit treatment groups. Vega did not submit any evidence even suggesting that the conditions of his detention were similar to those that courts have found to be unconstitutional." *Vega v. Carner*, No. 24-14063, 2026 WL 686540, at *2 (11th Cir. Mar. 11, 2026). Here, none of the alleged restrictive conditions rise to the level suggesting a denial of basic human needs. Accordingly, Kalifa has not stated a plausible § 1983 claim based on conditions in the SMU.

Kalifa fares no better when arguing that it is unconstitutional for him to be held in secure management pending an investigation for outside charges. Notably, Kalifa was in secure management for a rule infraction until July 22, 2026, and he signed his first complaint on August 7, 2026—only sixteen days later. It is unclear whether Kalifa is still under investigation or still held in secure management. Nevertheless, in *Vega v. Carner*, the Eleventh Circuit

concluded that Vega's nine-month confinement in special management pending a criminal investigation was not unconstitutional. The court explained:

> Applying the "professional judgment" standard, we do not consider Carner's decision to place Vega in the Special Management Unit to be unconstitutional. The decision to remove Vega from the general FCCC population was based on the fact that state authorities were criminally investigating whether Vega had attempted to defraud multiple other detainees. **The FCCC's policy of placing detainees who are being criminally investigated in more restrictive conditions is based on a legitimate state interest in protecting other detainees and ensuring that the object of the investigation is sufficiently secured.**
>
> . . .
>
> Further, the duration of Vega's placement in the Special Management Unit was not unconstitutional. *See Seling v. Young*, 531 U.S. 250, 265 (2001) ("[D]ue process requires that the conditions and duration of [civil] confinement ... bear some reasonable relation to the purpose for which persons are committed." (emphasis added)). Vega's placement in the Special Management Unit from February to December 2021, which was limited in time to the duration of the ongoing criminal investigation, was not unreasonable given the state's strong interests and the relatively limited nature of the liberty restrictions.

*Vega*, 2026 WL 686540, at *2 (emphasis added). Likewise, Kalifa's short detention in special management does not give rise to a plausible civil rights claim.

### III. Conclusion

Kalifa's amended complaint is dismissed because it does not state a claim on which relief may be granted. He may file a second amended complaint if he

wishes to proceed. Any amended complaint will also be subject to screening under 28 U.S.C. § 1915(e)(2)(B). Thus, before amending, Kalifa should carefully read this Order to determine whether he will be able to state an actionable civil rights claim.

Accordingly, it is **ORDERED**:

1. Kalifa's complaint is **DISMISSED** without prejudice because it does not state a claim on which relief may be granted.
2. Kalifa may file a second amended complaint within **TWENTY-ONE (21) DAYS.** If Kalifa does not comply, the Court will close this case without further notice.[3]
3. The Clerk is **DIRECTED** to provide Kalifa a blank civil rights complaint form.
3. Kalifa's request for summons (Doc. 10) is **DENIED**.

**DONE AND ORDERED** in Fort Myers, Florida on November 6, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Encl: civil rights complaint form
SA: FTMP-2

[3] If Kalifa does not file an amended complaint within the time allotted, this order will become a final judgment. *See Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 719–20 (11th Cir. 2020).